UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM MEDLEY, II,

       *Plaintiff*,

v.

DISTRICT OF COLUMBIA, *et al.*,

       *Defendants*.

Civil Action No. 25-00724 (AHA)

**Memorandum Opinion**

    William Medley, II sues the District of Columbia and the Latino Economic Development Corporation of Washington, D.C. ("LEDC"), asserting statutory, constitutional, and common law claims stemming from the District's failure to provide mortgage assistance after indicating that it would. Each defendant moves to dismiss the amended complaint for failure to state a claim. The court concludes Medley states promissory estoppel and negligent misrepresentation claims against the District, but does not state a due process claim against the District or any claim against LEDC. The court accordingly grants the District's motion to dismiss in part and denies it in part, and grants LEDC's motion to dismiss.

**I.    Background[1]**

    As part of the American Rescue Plan Act, Congress created a Homeowner Assistance Fund to distribute funding to states and the District to help homeowners facing financial hardship associated with COVID-19. ECF No. 1-18 ¶ 7; *see* 15 U.S.C. § 9058d. The District partnered with

---

[1] As required at the pleading stage, the court accepts the amended complaint's well-pled factual allegations and draws all reasonable inferences in Medley's favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

LEDC to carry out its program, which provided grants to assist eligible homeowners with mortgage payments, homeowner's insurance, utility payments, and other specified purposes. ECF No. 1-18 ¶¶ 9, 12. Under the program, District homeowners could apply for financial assistance and, if approved, the District made direct payments to their mortgage company or other service provider. *Id.* ¶ 13. For mortgage assistance, homeowners could receive up to $100,000 on past due payments and $18,000 on forward payments. *Id.* ¶ 85.

Medley lives in a Northeast D.C. home encumbered by two mortgages and, in September 2022, he applied for assistance with the mortgages through the Homeowner Assistance Fund. *Id*. ¶¶ 1, 32–33. In January 2024, the District sent him an email indicating he was approved for assistance with PEPCO utility payments, but his mortgage payments were ineligible for assistance. *Id*. ¶¶ 44, 46–47. When Medley asked why his mortgages were ineligible, an LEDC employee responded that a mortgage must be at least three months behind on payments to be eligible. *Id.* ¶¶ 48–50. Medley appealed, showing he was more than three months behind on both mortgages. *Id*. ¶¶ 51–52. In March 2024, the District responded with an updated notice, which now said each mortgage was "Eligible" and "Pending Payment." *Id*. ¶¶ 53–54, 56–58. The District's public guidance to homeowners stated: "Once the application is approved, program staff will work with your service providers to confirm past-due balances and make payments." *Id.* ¶ 15. It further stated: "Please know that we confirm payment amounts with your vendor so you will be current up to the date payment is made – you do not have to update anything yourself." *Id.* ¶ 18. Medley understood the District's notice and guidance to mean the District would make payments on both mortgages and forewent other options for addressing the mortgage payments he owed. *Id*. ¶¶ 59–61, 85–89. According to the amended complaint, the District never made any payments on Medley's mortgages. *Id*. ¶ 90. In July 2024, Medley received an email suggesting that his application was

on a "waitlist" because of limited funding. *Id.* ¶ 64. Later the same month, he received an email saying, for the first time, that his application was denied, because the documentation he provided to prove his residency in the District failed to meet the program's requirements. *Id.* ¶¶ 67, 69–71. According to Medley, he had submitted the required documentation of his residency and, when he asked what was wrong with his documentation, a District employee responded that his application was denied because his mortgages were not at least three months behind—the issue he had already appealed. *Id.* ¶¶ 72–76. During the period in which the District failed to make payments, Medley's mortgages accrued interest and late fees, and he also spent further resources defending against a foreclosure action on one of the mortgages. *Id.* ¶¶ 90–91.

Medley sued in D.C. Superior Court and the District removed the case to this court. ECF No. 1. Medley's amended complaint asserts a Fifth Amendment due process claim against the District; a D.C. Consumer Protection Procedures Act ("CPPA") claim against LEDC; as well as negligent misrepresentation and promissory estoppel claims against both defendants. ECF No. 1-18 ¶¶ 128–51, 160–65. Each defendant moves to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 12, 13.[2]

**II.    Discussion**

To survive dismissal for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The court "must take all the

---

[2]    The defendants also moved to dismiss claims by Tanya Gospodinova and a fraud claim by Medley. Those claims have since been voluntarily dismissed. *See* ECF No. 16 at 7–8.

factual allegations in the complaint as true," though it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. The Amended Complaint Plausibly Alleges A Promissory Estoppel Claim Against The District

Medley asserts a promissory estoppel claim against the District. To state a promissory estoppel claim, a plaintiff must allege (1) a promise, (2) "that the plaintiff suffered injury due to reasonable reliance on the promise," and (3) "that enforcement of the promise would be in the public interest and would prevent injustice." *Perkins v. District of Columbia*, 146 A.3d 80, 87 (D.C. 2016) (cleaned up) (quoting *District of Columbia v. McGregor Properties, Inc.*, 479 A.2d 1270, 1273 (D.C. 1984)).

The court concludes that, drawing all reasonable inferences in Medley's favor, he has plausibly alleged these elements as to the District—that the District promised him mortgage assistance and that he relied on the promise to his detriment, such that injustice would result from failure to enforce the promise. "Promissory estoppel provides a party with a remedy to enforce a promise where the formal requirements of a contract have not been satisfied." *Vila v. Inter–American Investment, Corp.*, 570 F.3d 274, 279 (D.C. Cir. 2009) (citing *Bender v. Design Store Corp.*, 404 A.2d 194, 196 (D.C. 1979)). The promise "need not be as specific and definite as a contract," but "in the final analysis there must be a promise." *Bender*, 404 A.2d at 196. Here, Medley specifically alleges that following his appeal, the District responded in March 2024 with an updated notice stating each of his mortgages was "Eligible (for Arrears and Forward Facing), Pending Payment." ECF No. 1-18 ¶¶ 53, 56. He also alleges the District's public guidance indicated that once your "application is approved, program staff will work with your service providers to confirm past-due balances and make payments," and that the program will "confirm payment amounts with your vendor so you will be current up to the date payment is made" so that

4

"you do not have to update anything yourself." *Id*. ¶¶ 15, 18. According to the amended complaint, the District also may have encouraged reliance in its notice by instructing eligible applicants to share the notice with "anyone who needs documentation of the current status" of their application for assistance, such as mortgage servicers. *Id*. ¶¶ 59, 87. Medley alleges he understood the notice and guidance to mean the District would make payments on both mortgages and forewent other options for addressing the payments owed. *Id*. ¶¶ 59–61, 85–89. And upon the District's failure to make payments, he incurred interest, late fees, and further costs related to a foreclosure proceeding. *Id*. ¶¶ 90–91. The amended complaint therefore plausibly alleges a promise, detrimental reliance, and that it would be unjust to not enforce the promise.

The District makes two arguments in response. First, it points out that the response it sent to Medley after his appeal was not a model of clarity. For example, the response included the original lines stating that his mortgages were "Not Eligible" in addition to the new lines stating that the mortgages were "Eligible" and "Pending Payment." ECF No. 13-1 at 17. In addition, the response did not state a specific amount that would be paid to his mortgage servicers nor a timeline for payment. *Id*. The District relies on this to say that the "conflicting language" was not clear enough to be an approval of Medley's application for mortgage assistance, let alone to be reasonably relied upon as a promise that payments would be made to Medley's mortgage servicer. *Id.* at 15–17. And even if the notice was clear enough to communicate eligibility for mortgage assistance, the District argues, it was not reasonable for Medley to forego other mortgage assistance options in reliance on a mere statement of eligibility. *Id.* at 17. Maybe. But drawing all inferences in Medley's favor, as the court must at this stage—and considering the parts of the District's notice to Medley indicating he was now eligible for mortgage assistance and that it was "pending payment," as well as its guidance that approval meant direct payments would be made—

5

and mindful that promissory estoppel does not require the specificity of a contract, the court concludes Medley's allegations suffice to state a claim. *See PeaceTech Lab, Inc. v. C5 Accelerate LLC*, No. 20-cv-922, 2021 WL 106718, at *7 (D.D.C. Jan. 12, 2021) (holding that emails indicating defendant expected to move forward with a transaction sufficed to allege a promise).

The District second argues that estopping the government requires a plaintiff to show an additional element—namely, "some type of affirmative misconduct." ECF No. 13-1 at 14–15. As an initial matter, it is not clear that this is actually an element of a promissory estoppel claim. The requirement of "affirmative misconduct" appears to have its origins in equitable estoppel, a distinct doctrine that applies when a party seeks to estop the government from asserting a defense in litigation based on its prior conduct. *See Gropp v. D.C. Bd. of Dentistry*, 606 A.2d 1010, 1016 (D.C. 1992) (citing *Schweiker v. Hansen*, 450 U.S. 785, 788–90 (1981); *U.S. Immigr. & Naturalization Serv. v. Hibi*, 414 U.S. 5, 8 (1973); *Montana v. Kennedy*, 366 U.S. 308, 314 (1961)). The D.C. Court of Appeals has not held that "affirmative misconduct" is an element of promissory estoppel claims against the District. *See Georgetown Entertainment Corp. v. District of Columbia*, 496 A.2d 587, 592 (D.C. 1985) (listing the elements of promissory estoppel); *Perkins*, 146 A.3d at 87; *McGregor Properties, Inc.*, 479 A.2d at 1273. Nor was that an element of promissory estoppel at common law. *See* 4 Williston on Contracts § 8:6 (4th ed. 2025) (describing the elements of promissory estoppel under the first and second restatements of contracts). The District relies on *Mamo v. District of Columbia*, 934 A.2d 376 (D.C. 2007), but that case only mentioned "affirmative misconduct" in passing, after concluding the plaintiff had failed to state a claim for promissory estoppel, and specifically recognized that the additional requirement was applicable to equitable estoppel. *See id.* at 386.

In any event, in the equitable estoppel context, the D.C. Court of Appeals has concluded a plaintiff fails to establish affirmative misconduct when she lacks evidence that the District "made an affirmative promise." *Leekley v. D.C. Dept. of Employment Services*, 726 A.2d 678, 680 (D.C. 1999); *see also Robinson v. Smith*, 683 A.2d 481, 492 (D.C. 1996) (finding a lack of "affirmative misconduct" where the District "never made an affirmative representation"). As discussed, however, in this case Medley has plausibly alleged that the District made an affirmative promise to him that one could have reasonably relied upon. Medley also alleges that each time he tried to inquire about his application, he was given shifting explanations that conflicted with the documentation he had submitted. ECF No. 1-18 ¶¶ 49–50, 52, 64, 70–76. Even assuming the affirmative misconduct requirement has some application in this context, the court concludes Medley has plausibly alleged it. *See Ramallo v. Reno*, 931 F. Supp. 884, 895 (D.D.C. 1996) (explaining that if the court finds the government made plaintiff a promise and plaintiff reasonably relied on that promise, the government's subsequent repudiation constitutes affirmative misconduct). The court accordingly concludes that Medley has plausibly alleged promissory estoppel against the District.

**B. The Amended Complaint Plausibly Alleges A Negligent Misrepresentation Claim Against The District**

The amended complaint asserts a common law negligent misrepresentation claim against the District. To state a negligent misrepresentation claim, a plaintiff must plausibly allege: "(1) the defendant made a false statement or omission of a fact, (2) the statement or omission was in violation of a duty to exercise reasonable care, (3) the false statement or omission involved a material issue, and (4) the plaintiffs reasonably and to their detriment relied on the false information." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 37 (D.D.C. 2015) (citing *Sundberg*

7

*v. TTR Realty, LLC*, 109 A.3d 1123, 1131 (D.C. 2015)). The amended complaint plausibly alleges all these requirements as to the District.

First, Medley plausibly alleges the District made a false statement of fact when it told him that payments for his mortgages were "pending" and omitted a fact when it failed to inform him that payments to approved applicants were conditioned on the availability of limited funds. ECF No. 1-18 ¶¶ 66, 162. The District argues it was not false to say Medley's mortgages were "pending payment" even if it never planned to or did not initiate any payment because those words should be understood as describing an application status and not forthcoming payment. ECF No. 19 at 11. And it says there was no omission because saying "pending payment" could be understood to set an expectation of future contingencies, including insufficient funds. *Id*. That may be so, but construing the allegations in Medley's favor, including the District's representations that it would make direct payments to mortgage servicers without further action from applicants, Medley has plausibly alleged a false statement about forthcoming payment or omission of circumstances in which payment would not be made.

Second, Medley plausibly alleges that the alleged false statement and omission violated a special duty of care owed to him by the District. To pursue a negligence claim against the District, a plaintiff must allege "the District owed a special duty to the injured party, greater than or different from any duty which it owed to the general public." *Snowder v. District of Columbia*, 949 A.2d 590, 603 (D.C. 2008). Medley points to a then-applicable law providing the District "shall ensure" any homeowner applying for Homeowner Assistance Fund relief that was "established to assist homeowners impacted by the COVID-19 public emergency" is "provided with documentation in a timely and ongoing manner that will enable the applicant to present proof of financial assistance application status" to "any housing or financing entity to which the homeowner is indebted." D.C.

8

Code § 42-851.11(a)(3)(A); D.C. Code § 42-851.11(a)(1)(C). By prescribing "mandatory acts" of providing ongoing communication that protected a "particular class" of homeowners seeking assistance because of the COVID-19 public emergency, this statute gave rise to a special duty of care. *Snowder*, 949 A.2d at 604. Medley plausibly alleges he is in that class and that the false statement or omission about forthcoming mortgage payments violated the duty to provide him with "timely and ongoing" documentation of his status as required by the statute. To the extent the mortgage payment was not forthcoming or would be canceled upon depletion of funds, it is reasonable to infer the District "knew or should have known" this at the time of the alleged misrepresentations. *Sherman v. Adoption Center of Wash., Inc.*, 741 A.2d 1031, 1037 (D.C. 1999).

Third, Medley plausibly alleges these misrepresentations were material because they would "reasonably influence" the action he would take. *Jannenga v. Nationwide Life Ins. Co.*, 288 F.2d 169, 172 (D.C. Cir. 1961); *see also C & E Servs., Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 258 (D.D.C. 2007) (recognizing that "a representation is material if it reasonably influences a plaintiff to take an action he or she may have refrained from taking if aware of the actual facts"). Medley specifically alleges that absent the alleged representations, he might have pursued other mortgage assistance, such as applying for funds from other sources or executing a regular or short sale of his home. ECF No. 1-18 ¶ 89.

And fourth, Medley plausibly alleges that he reasonably and detrimentally relied on the District's representations. As described above, Medley alleges that because the District's representations led him to believe mortgage assistance was forthcoming, he forewent other options for addressing his delinquent payments, incurred interest and late fees on his mortgages, and defended against prolonged foreclosure proceedings. *See* ECF No. 1-18 ¶¶ 59–61, 85–91.

9

The court accordingly concludes Medley has plausibly alleged negligent misrepresentation against the District. The District argues that, even if Medley has plausibly alleged a material false statement or omission of fact, a negligent misrepresentation claim cannot be premised on a representation about a "future act." ECF No. 13-1 at 21 (citing *Parnigoni v. St. Columba's Nursery Sch.*, 681 F. Supp. 2d 1, 32 (D.D.C. 2010)). But Medley's claim is not premised on a representation about a future act—but rather, on the District's representation that payment was "pending" with his mortgage servicer when it had no plan to make payment or omitted a known circumstance in which it would not make payment. Those were present facts at the time. Moreover, even if circumstances did change, the particular duty Medley alleges explicitly includes the obligation to provide "timely and ongoing" documentation to an applicant to enable the applicant to interface with his mortgage servicer about the status of his application—the District appears to have failed to provide timely notice that Medley would not receive funding, an omission of a present fact.

The District moves for partial summary judgment on the negligent misrepresentation claim, asserting that Medley failed to provide notice of this claim as required by D.C. Code § 12-309. ECF No. 13-1 at 17–19. Medley argues this requirement does not apply to his claim because his damages are easily ascertainable and not unliquidated. ECF No. 16 at 20–21. A plaintiff's failure to comply with the notice requirement of D.C. Code § 12-309 is an affirmative defense. *See Turpin v. District of Columbia*, No. 22-cv-1807, 2022 WL 14807768, at *2 (D.D.C. Oct. 26, 2022). Because a plaintiff "does not have to plead the non-existence of an affirmative defense" in his complaint, the District's motion for summary judgment on this basis is premature. *Flying Food Group, Inc. v. NLRB*, 471 F.3d 178, 184 (D.C. Cir. 2006). In light of the fact that Medley's other claims will proceed, the court declines to consider the District's early motion for summary judgment without prejudice to the argument being raised later.

### C. Medley Does Not Plausibly Allege A Due Process Claim

Medley's final claim against the District is a Fifth Amendment procedural due process claim under 42 U.S.C. § 1983.

To plead a procedural due process claim, a plaintiff must plausibly allege "the Government deprived her of a liberty or property interest to which she had a legitimate claim of entitlement, and that the procedures attendant upon that deprivation were constitutionally insufficient." *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (cleaned up) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Here, Medley argues that the District's promissory estoppel gave rise to a property interest in his expected mortgage assistance protected by due process, and the District then withheld the expected payments and denied Medley's application without any process. ECF No. 16 at 21–26. The District does not dispute that promissory estoppel can give rise to a property interest, and does not dispute that the complaint alleges the absence of any process in withholding the expected funds. *See* ECF No. 19 at 6. Given the court's conclusion that Medley has alleged promissory estoppel and the District's concession, the court assumes Medley has plausibly alleged a property interest and a deprivation without process.

However, to bring this claim against the District, a municipality, under § 1983, as Medley tries, he must also allege "that 'the municipality's own wrongful conduct' caused his injury, not that the municipality is ultimately responsible for the torts of its employees." *Connick v. Thompson*, 563 U.S. 51, 70 n. 12 (2011) (quoting *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 38 (2010)). A plaintiff can satisfy this requirement by plausibly alleging: (1) "the explicit setting of a policy by the government"; (2) "the action of a policy maker within the government"; (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom'"; or (4) "deliberate indifference to the risk . . . [of] constitutional violations." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)

(citations omitted). Here, Medley relies on the last avenue, arguing that the District was deliberately indifferent to the risk of constitutional violations when it denied previously-approved applications for funding. *See* ECF No. 16 at 27–28. The court concludes Medley has not plausibly alleged deliberate indifference.

To plead deliberate indifference, a plaintiff must plausibly allege facts from which one can infer that "the municipality knew or should have known of the risk of constitutional violations, but did not act," which can be shown through a "pattern of similar constitutional violations." *Hurd v. District of Columbia*, 997 F.3d 332, 339 (D.C. Cir. 2021) (cleaned up). The D.C. Circuit has held that, "[a]lthough this is an objective standard, it involves more than mere negligence." *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004). "It does *not* require the city to take reasonable care to discover and prevent constitutional violations," but means that "faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction." *Id.*

Medley has plausibly alleged negligence on the part of the District, but not deliberate indifference. In addition to the District's alleged misrepresentations, the amended complaint alleges communications by District representatives that gave conflicting, conclusory responses to Medley's inquiries. ECF No. 1-18 ¶¶ 49–50, 52, 64, 70–76. The amended complaint also cites a Washington Post investigation published about two months after Medley was told his mortgage assistance application was denied, describing others who were approved for assistance and never received funds, with consequences similar to Medley's, including escalating debts and foreclosure threats. *Id.* ¶ 122 (citing Danny Nguyen, *Needy D.C. homeowners applied for pandemic aid. They're still waiting*, Wash. Post, Sept. 30, 2024). Relying on that investigation, the amended complaint alleges that over 160 applicants were similarly approved but never received payments,

and that the District's administration of the housing assistance program was among the poorest-performing in the whole country. *Id.* ¶¶ 23, 122. These allegations, accepted as true, would support an inference that the District's Homeowner Assistance Fund was run in a slipshod fashion that upset expectations in an area that is of the utmost importance—people's homes. But the allegations of individual misstatements and inconsistencies, and poor administration in the aggregate, do not plausibly allege the more "stringent" standard of deliberate indifference. *Connick*, 563 U.S. at 61.

### D.  The Amended Complaint Does Not Plausibly Allege Any Claim Against LEDC

Medley also asserts promissory estoppel and negligent misrepresentation claims against LEDC, as well as a CPPA claim against LEDC.

Although Medley plausibly alleges promissory estoppel against the District, he does not plausibly allege promissory estoppel against LEDC. Medley repeatedly alleges "on information and belief" that LEDC "generated" communications for the District, including the notice indicating his eligibility for mortgage assistance. ECF No. 1-18 ¶¶ 45, 55, 65, 68. These conclusory allegations do not plausibly allege LEDC's involvement in the communications that Medley principally relies on for his promissory estoppel claim. But even assuming LEDC prepared and sent the relevant messages for the District, under the plain terms of Medley's allegations, LEDC was acting as the District's agent in making communications. *See* ECF No. 1-18 ¶ 12 (quoting the District's website, which stated that LEDC was processing "applications and payments for" the District, and that is why applicants "may hear from them"); *Davey v. King*, 595 A.2d 999, 1002 (D.C. 1991) ("The hallmark of an agency relationship is that the agent takes action on behalf of the principal and subjects himself to the orders of the principal."). So any message LEDC prepared and sent that conveyed a promise was a promise on behalf of the District and not on behalf of LEDC itself. *See Scott v. FedChoice Fed. Credit Union*, 274 A.3d 318, 327 (D.C. 2022) (explaining that "where an agent enters into a contract on behalf of a principal" the agent "would

not be liable if the principal is disclosed"); *see also Garland v. Davis*, 45 U.S. 131, 148 (1846) ("[P]ublic agents are not usually liable on mere contracts or promises made [on] behalf of their principals."). There is no allegation LEDC was acting beyond the scope of its agency relationship with the District. *See, e.g.*, *Myers v. Alutiiq Intern. Solutions, LLC*, 811 F. Supp. 2d 261, 274 (D.D.C. 2011) (allowing a promissory estoppel claim to go forward against individual employees where there may have been a question as to "the terms and conditions" of their individual employment that "will inform the application of the agency principles"). The court accordingly dismisses the promissory estoppel claim against LEDC.

Medley's negligent misrepresentation claim against LEDC fails for similar reasons. Medley, again, fails to plausibly allege LEDC's personal involvement in the communications that negligently misrepresented the status of his mortgage assistance, beyond conclusory allegations. In addition, Medley fails to plausibly allege LEDC owed him any duty of care, separate and apart from the District's duty, and does not plausibly allege that LEDC knew or should have known the District—who was in charge of the program and making payments, *see* ECF No. 1-18 ¶¶ 9, 12—would fail to make mortgage payments. The allegations do not support a reasonable inference that LEDC "knew or should have known" its representations were false or misleading. *Sherman*, 741 A.2d at 1037. The court accordingly dismisses the negligent misrepresentation claim against LEDC.

Medley also fails to state a CPPA claim against LEDC. "The CPPA applies only to consumer-merchant relationships." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 857 F.3d 939, 948 (D.C. Cir. 2017) (citing *Snowder*, 949 A.2d at 598–600). The statute defines a merchant as someone "who in the ordinary course of business does or would sell, lease, or transfer, either directly or indirectly, consumer goods or services" or "who in the ordinary course of business does

or would supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3)(A). The amended complaint does not allege that LEDC functioned as a merchant—it did not sell, lease, or transfer any goods or services, or supply any goods or services that are or would be the subject matter of a trade practice. *See* D.C. Code § 28-3901(a)(6) (defining "trade practice" as "any act which does or would create, alter, repair, furnish, make available, [or] provide information about . . . a sale, lease or transfer, of consumer goods or services"). Medley argues that LEDC is a merchant because it assisted with the District's Homeowner Assistance Fund and the provision of mortgage assistance payments would have "altered" his mortgages, analogizing to cases about companies that serviced loans. *See* ECF No. 16 at 30–31. While there is no dispute that a mortgage is a good or service, LEDC helping the District administer its Homeowner Assistance Fund is far removed from serving as the direct provider or servicer of a mortgage. There is no allegation LEDC itself engaged in any activity related to "a sale, lease, or transfer" of any mortgage to Medley. D.C. Code § 28-3901(a)(6).

**III.   Conclusion**

For these reasons, the court grants the District's motion to dismiss in part and denies it in part, and the court grants LEDC's motion to dismiss. The court denies the District's partial motion for summary judgment, without prejudice to it being renewed at an appropriate time. Medley's promissory estoppel and negligent misrepresentation claims against the District will proceed. Medley's due process claim against the District and all claims against LEDC are dismissed.

AMIR H. ALI
United States District Judge

Date:   January 22, 2026